I respectfully concur with the judgment and opinion of the majority.
In the second point of the majority's analysis of theBray opinion of the Twelfth Appellate District, I would also address the concept advanced by the state that somehow the original trial court retains jurisdiction over the imposition of "bad time." Presumably, this is because the original trial court has included the potential of "bad time" in its sentencing of the defendant.
In response, I would note as previously mentioned by the majority, that the term "violation," as used in the statute, refers to any act which constitutes a criminal offense under either the laws of Ohio or the United States. It is therefore a new crime and requires an independent prosecution. It is not somehow an extension of the old crime. The incantation of certain words during the sentencing process cannot cure an ill that is fatal from the beginning. Thus, the court which had jurisdiction over the original offense cannot magically give itself continuing jurisdiction over new offenses which have yet to be committed by the defendant.
The ability to impose "bad time" is not at all like the jurisdiction retained by a trial court over a probation infraction. There the trial court could impose all or part of the original sentence. As the Supreme Court of Ohio has recently pointed out, the trial court has no jurisdiction to increase the original sentence. See State v. Draper (1991),60 Ohio St.3d 81. Consistent with this principle, the trial court cannot somehow confer jurisdiction on a non-judicial entity, particularly when the court itself no longer has jurisdiction.
The majority stresses that it is the concept of a "neutral magistrate" which is the critical missing ingredient in the statutory process at issue. I believe that concept is subsumed in the greater issue of the absence of the judicial process itself. It is true that constitutional approval has been given to legislation which has created quasi-judicial powers in various administrative agencies. However, those quasi-judicial adjudications of civil matters are all subject to judicial review at some point in the process. It would seem apparent that when criminal prosecutions are at issue, the minimum constitutional standards set out in the civil arena must not only be met, but must be exceeded. The instant statute even fails to meet those long established constitutional standards for civil matters. Thus, it is not just the judge which is missing; rather, it is the third brand of government — the judiciary and the judicial process it represents.
I agree with the majority that the United States Supreme Court's decision in Wolff is more supportive of this court's position than it is of the Bray decision. In Wolff, no one disputes the court's emphasis on the fact that only an "intermediate" degree of protection was accorded to a convicted offender in prison. However, the court's explanation was very clear that this was in reference to the revocation of "good time credits." To again point out the obvious, revocation of "good time credits" does not extend the original sentence. The revocation merely imposes the original sentence, for which there is clear jurisdiction. To the contrary, the imposition of "bad time" is a new criminal prosecution for which additional time is imposed without any constitutional compliance or safeguard.
I am aware that this court's position will be construed by many as a "nit picky technicality." Nevertheless, our oath as judges has always been to uphold and support the laws and theConstitution of the state of Ohio. However well intentioned the legislature may have been, it opened Pandora's Box with this piece of legislation. If we were to allow this challenge to go unanswered, we would, in effect, be allowing the destruction of the sole barrier which protects the public from an overzealous government — the Constitution.
It is not as if there were no other means to achieve the apparent goal of the legislature. There has always been an ability for the warden of a prison to pursue criminal prosecution of inmates who commit criminal offenses. The matter simply proceeds through the court system, just as would any other criminal case. All of the constitutional protections are in place for that process. One has only to look at the numerous prosecutions which resulted from the Lucasville riot, to see that such prosecutions are feasible.
The wisdom of the legislature in eliminating "good time," while debatable, is not at issue here! Instead, our concern is our absolute certainty that the legislature could not replace "good time" with the "bad time" scheme set forth in the statute.
Just as does the majority, I find the present and future constitutional implications of this legislation to be truly alarming. The potential ramifications extend well beyond prison walls to the civilian population. I, too, find this piece of legislation to be constitutionally defective in almost every way, and would, accordingly, grant the writ of habeas corpus.
 ----------------------------------- PRESIDING JUDGE JUDITH A. CHRISTLEY